IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Tommy Young, #280632, | ) | C/A No.: 1:11-2374-CMC-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden Stevenson, Lieber Correctional | ) | |
| Institution, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner Tommy Young was an inmate at the Broad River Correctional Institution

of the South Carolina Department of Corrections when he filed this pro se petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] This matter is before the court

pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and

Recommendation on Respondent's return and motion for summary judgment. [Entry #22,

#23]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised

Petitioner of the summary judgment and dismissal procedures and the possible

consequences if he failed to respond adequately to Respondent's motion by January 20,

2012. [Entry #24]. Petitioner filed a response to the motion for summary judgment on

January 9, 2012. [Entry #30].

Having carefully considered the parties' submissions and the record in this case, the

undersigned recommends that Respondent's motion for summary judgment be granted.

---

[1] By filing received February 13, 2012, Petitioner informed the court that he has been
transferred to Perry Correctional Institution. [Entry #32].

I.    Factual Background

Petitioner was accused of robbing a convenience store clerk while masked and armed with a gun.   The clerk testified that, despite the mask, he recognized Petitioner from having seen him earlier in the day.   Police retrieved a gun from an apartment to which they believed Petitioner had fled.

At trial, the state's case was based primarily on the testimony of the clerk, who testified that at around 10:15 pm, a man walked up and asks for a 211 beer, which the store did not sell. [Entry #22-9 at 58]. The clerk testified that the man walked to the back of the store and a few minutes later, a person dressed similarly, with the same height, voice, shape, scars, and color walked up with a gun, wearing a mask and demanding money. [Entry #22-9 at 57-67]. The clerk testified that he was scared and went behind the cigarette case, and that the man pulled the trigger three times, but the gun did not fire. [Entry #22-9 at 60, 64]. Thereafter, the clerk testified he went to the cash register, pulled out all the bills and gave it to the man, who ran away. [Entry #22-9 at 60-64, 66, 71]. The clerk identified the man as the same person who had appeared in the store earlier and gave police a description. [Entry #22-9 at 67]. Captain Jerome White testified that he prepared a photographic line-up about a week later, after he had developed a suspect in talking with the car wash manager next door to the convenience store. [Entry #22-9 at 78-79].   The clerk picked out Petitioner from the line-up and likewise identified Petitioner in court at trial. [Entry #22-9 at 80, 68, 62].   Captain White testified that based on the clerk's identification of Petitioner from the line-up, he obtained arrest warrants for him. [Entry

#22-9 at 81-82]. The arrest warrants were signed by the municipal judge of Hardeeville on October 18 and 19, 2004, and certified for service on October 20, 2004 to Beaufort County. [Entry #22-11 at 3-4].

Police had received information that Petitioner's girlfriend may have been staying with Casey Johnson in Apartment G-5 of the Park View Apartments in Beaufort. [Entry #22-9 at 82, 87-89, 116-117]. In executing the arrest warrant on October 20, 2004, police initially went to Johnson's apartment, but did not find Petitioner there. [Entry #22-9 at 87]. As police exited Apartment G-5, the resident of Apartment E-8 ran out of it holding two children and spoke to the police. [Entry #22-9 at 82-88]. As a result of that resident's statements, the police entered Apartment E-8 and arrested Petitioner. [Entry #22-9 at 83-89].

Johnson gave consent to the police to search her apartment, where police found a .22 pistol on top of a pile of clothes and duffle bag in a closet. [Entry #22-9 at 92-103]. Johnson testified that the gun did not belong to her, and that Petitioner's girlfriend had stayed in the apartment the prior night. [Entry #22-9 at 116-117]. The clerk identified the gun as the one that was used by the robber. [Entry #22-9 at 121].

Petitioner's cousin, Tony Richardson, testified the gun belonged to his and Petitioner's grandmother, as follows:

Solicitor:      Did you ever see Tommy with the gun?
Richardson:   Yeah.
Solicitor:      Yes?
Richardson:   Right.
Solicitor:      Do you know when you saw him with the gun?

Richardson:   Saw him when I was cleaning the yard, he put it to my head.

[Entry # 22-9 at 114].

Trial counsel was not able to hear Richardson's comment, so he did not make a contemporaneous objection. [Entry #22-9 at 123-131]. After the close of the state's case, counsel learned about Richardson's testimony from Petitioner and moved for a mistrial on the basis that it was prejudicial character evidence. *Id.* The trial court denied the motion. [Entry #22-9 at 131; #22-10 at1].

The primary evidence used against Petitioner was (1) the in-court identification of Petitioner by the clerk, (2) the photographic lineup, and (3) a loaded gun in poor condition seized from Johnson's apartment after a consensual search.

II.     Procedural Background

Petitioner was indicted by the Jasper County grand jury in December 2004 for armed robbery (2004-GS-27-786) [Entry #22-10 at 42-43] and possession of a firearm during commission of certain crimes (2004-GS-27-787) [Entry #22-10 at 44-45]. He was represented at trial on July 25, 2005 by John D. Bryan, Esq. and Stephen T. Plexico, Esq. before the Honorable Perry M. Buckner. [Entry #22-9 at 5].   The jury convicted Petitioner as charged, and Judge Buckner sentenced Petitioner to 20 years for armed robbery and five years consecutive for possession of a firearm. [Entry #22-10 at 39-40].

Petitioner appealed his convictions and sentences to the South Carolina Court of Appeals ("Court of Appeals"). On appeal, Petitioner was represented by Aileen P. Clare of

the South Carolina Commission on Appellate Defense who filed an *Anders*[2] brief raising the following issue: "Did the lower court abuse its discretion by refusing to declare a mistrial after the state introduced irrelevant, prejudicial character evidence [concerning Richardson's testimony regarding the gun]?" [Entry #22-1 at 4]. Attorney Claire certified to the court that the appeal was without merit and asked to be relieved as counsel. [Entry #22-1 at 9]. Petitioner filed a *pro se* response to the *Anders* brief, challenging the in-court identification by the clerk and making a general claim that his trial was unfair because neither he nor his lawyer had time to prepare a defense and claiming his due process rights were violated. [Entry #22-2].

On January 9, 2008, the Court of Appeals filed an unpublished decision dismissing Petitioner's appeal pursuant to the *Anders* procedure. [Entry #22-3]. The remittitur was issued on January 25, 2008. [Entry #22-4].

Petitioner filed a pro se application for post-conviction relief ("PCR") on June 23, 2008, as amended by his PCR counsel Charles T. Brooks III, Esq. on July 9, 2009. At PCR, he alleged ineffective assistance of counsel for (1) failing to challenge sufficiency of the arrest warrant; (2) failing to properly investigate or interview witnesses; and (3) failing to inform Petitioner of important issues such as discovery and photo lineup. [Entry #22-10

---

[2] *Anders v. California*, 386 U.S. 738 (1967). *Anders* requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. *Anders*, 386 U.S. at 744.

at 47-57, 58-60]. A PCR evidentiary hearing was held before the Honorable Alexander S. Macaulay on July 31, 2009,[3] at which Petitioner and Attorney Brooks appeared. [Entry #22-10 at 66-88]. On October 16, 2009, Judge Macaulay filed an order of dismissal. [Entry #22-10 at 89-93].

Petitioner appealed from the denial of PCR and was represented by Appellate Defender LaNelle Cantey DuRant of the South Carolina Commission on Indigent Defense, Division of Appellate Defense. Attorney DuRant filed a *Johnson*[4] petition for writ of certiorari in the South Carolina Supreme Court on June 15, 2010 and petitioned to be relieved as counsel. [Entry #22-5]. The petition raised the following issue: "Did the PCR court err by failing to find trial counsel ineffective for not investigating circumstances surrounding the photo line-up, when petitioner reported that the line-up was shown to the victim before the photo of him purportedly used in the line-up was even taken?" [Entry #22-5 at 3]. On July 7, 2010, Petitioner filed a pro se brief raising the following issues: "(1) Did the PCR court err by failing to find trial counsel ineffective for not properly investigating and consulting with the Petitioner on important issues such as discovery and photo line-up?"; and "(2) Did the PCR court err by failing to find trial counsel ineffective for not moving to file a motion to suppress illegally-seized evidence based on a defective warrant?" [Entry #22-6 at 3].

---

[3] The PCR transcript is dated July 31, 2009, but the PCR court's Order of Dismissal recites August 31, 2009 as the date of the hearing.

[4] *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988) (applying the factors of *Anders v. California*, 386 U.S. 738 (1967), to post-conviction appeals).

The Supreme Court of South Carolina denied the petition on August 4, 2011 and granted counsel's request to withdraw. [Entry #22-7]. The remittitur was issued on August 23, 2011. [Entry #22-8].

Petitioner filed this federal petition for a writ of habeas corpus on August 26, 2011. [Entry #1].[5]

III. Discussion

A. Federal Habeas Issues

Petitioner now asserts he is entitled to a writ of habeas corpus on the following ground:

**Ground One:**  Ineffective Assistance of Counsel

Supporting Facts: Before trial counsel was ineffective for failing to file a motion to suppress illegally seized evidence based on an unconstitutional warrant.

**Ground Two:**  Ineffective Assistance of Counsel.

Supporting Facts: Counsel was ineffective for not properly investigating or consulting with him on important issues such as discovery. In this case, counsel never gave petitioner any copies of his discovery before or after trial.

**Ground Three:**  That there exists evidence of material facts not previously presented and heard.

---

[5] The petition was received by the court on September 2, 2011 and docketed on September 7, 2011. However, because Petitioner is incarcerated, he benefits from the "prison mailbox rule." *Houston v. Lack,* 487 U.S. 266 (1988). The mailroom stamp indicates that the petition was deposited in the prison mailing system on August 26, 2011. [Entry #1-1 at 14].

> Supporting Facts: Petitioner found out a little after his conviction from the help of his trial transcript p. 44 that the photo in the photographic line-up in this case did not exist until after he was arrested on these same charges, meaning the victim could never had identified me from the line-up in the case. The only line-up in the case.

[Entry #1 at 5-9].

B.      Standard for Summary Judgment

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon

mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

  C.  Habeas Corpus Standard of Review

    1.  Generally

  Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2.      Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)      (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

(A)      the applicant has exhausted the remedies available in the courts of the State; or

(B)     (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim

as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007).[6] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, regardless of whether the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).

### 3. Ineffective Assistance of Counsel Claims

To prevail on his ineffective assistance of counsel claim, Petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and

---

[6]In *Bostick v. Stevenson*, 589 F.3d 160, 162−65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

(2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Petitioner bears the burden of proving an error and prejudice in his ineffective assistance of counsel claim. *Id.* The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 131 S.Ct. at 787–88; *Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' ... [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 131 S.Ct. at 788 (*quoting Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 131 S.Ct. at 788. In such circumstances, the "question is not whether counsel's actions were unreasonable," but whether "there is any

reasonable argument that counsel satisfied *Strickland*'s deferential standards." *Id.* The unreasonableness of the state court determination must be "beyond any possibility of fairminded disagreement." *Id.* at 787. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 786. Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id., quoting Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)).

D.     Analysis

1.     Merits Review of Ground One

In Ground One, Petitioner argues that trial counsel was ineffective for failing to file a motion to suppress illegally-seized evidence based on an allegedly unconstitutional warrant.   Petitioner appears to claim that the warrant was insufficient for a lack of probable cause. At PCR, Petitioner argued that the arrest warrant was ambiguous and claimed that if trial counsel had challenged it, it would have prevented the clerk from testifying at trial and identifying Petitioner. Trial counsel clarified at PCR that he had asked for a preliminary hearing in November 2004, but that the grand jury indicted Petitioner in December 2004, which the PCR court found was the equivalent to a direct indictment. [Entry #22-10 at 84].   The PCR court's order of dismissal stated, in relevant part:

> This Court finds that counsel was not ineffective for failing to challenge the arrest  warrant. The Applicant was directly indicted and there was no basis to challenge the arrest warrant. Moreover, the evidence was discovered pursuant to consent to search the residence.

[Entry #33-1 at 5].

Respondent argues that the arrest warrant had no effect on the admission of any evidence at trial that could have been suppressed, as under the state criminal rules, Petitioner's indictment prior to holding of a preliminary hearing obviated the need for the hearing to quash the arrest warrant. Specifically, Respondent argues that no evidence seized from Petitioner as a result of the arrest was ever introduced at trial. The gun was seized pursuant to a consent search made by the owner of an apartment that Petitioner did not reside in and in which he had no expectation of privacy. [Entry #22-9 at 115-120].

The undersigned finds that Petitioner misapprehends the law in claiming that the clerk would have been precluded from testifying if trial counsel had successfully challenged the arrest warrant. Where, as here, a defendant is indicted prior to a preliminary hearing being held, the defendant is not entitled to such a hearing. *See* Rule 2(b), S.C.R.Crim.P. (preliminary hearing "shall not be held ... if the defendant is indicted by a grand jury ... before the preliminary hearing is held."). Because Petitioner was not entitled to a preliminary hearing, his trial counsel's failure to successfully challenge the arrest warrant at a preliminary hearing is moot.

Petitioner argues in his response to summary judgment that the gun was the fruit of the poisonous tree and should have been excluded from evidence. However, the gun was not seized incident to Petitioner's arrest, but in Johnson's apartment, pursuant to her consent to the search. Petitioner did not reside or even stay in Johnson's apartment, and therefore he did not have a reasonable expectation of privacy therein. Independently, any

successful challenge to the arrest warrant would not have precluded the clerk from testifying at trial, as Petitioner suggests. The clerk was a witness to and victim of the robbery and would have been allowed to testifying as to the events of the robbery.

Petitioner has failed to show the PCR court unreasonably applied United States Supreme Court precedent in deciding that trial counsel was not ineffective for failing to file a motion to suppress illegally-seized evidence based on an unconstitutional warrant. Additionally, Petitioner has failed to show by clear and convincing evidence the PCR court reached an unreasonable factual determination of this issue given the evidence and record before it. *Evans v. Smith*, 220 F.3d 306, 312 (4th Cir. 2000) (federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding); *Williams v. Taylor*, 529 U.S. 420 (2000); *Bell v. Jarvis*, 236 F.3d 149, 157-158 (4th Cir. 2000); 28 U.S.C. § 2254(e)(1) (determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence). Therefore, Petitioner has failed to overcome the deferential standard of review accorded the state PCR court's determination of this issue. As a result, Petitioner has failed to show he is entitled to federal habeas corpus relief on Ground One.

> 2.     Merits Review of Grounds Two and Three

In Ground Two, Petitioner argues that trial counsel was ineffective for not properly investigating or consulting with him on important issues such as discovery, and he

contends that counsel never gave him any copies of his discovery before or after trial. He claims that had he done so, he could have asserted that the photographic line-up introduced included a photograph of him that he claims was taken after he was arrested. He states he developed this information when he read the transcript after the trial, citing to page 44. In Ground Three, Petitioner argues that there exists evidence of material facts not previously presented or heard. Specifically, Petitioner argues that he found out after his conviction that the photo used in the line-up did not exist until after he had been arrested on the charges. At PCR, his counsel clarified that Petitioner claimed his picture was taken on the 23rd, whereas the photo lineup was given to the clerk on the 18th. He argues, therefore, the clerk could not have identified him from the line-up in the case. Because Grounds Two and Three are intertwined, the court addresses them together.

The record reveals that the trial court held a *Biggers*[7] hearing where the clerk testified. [Entry #22-9 at 41-55]. In his testimony, the clerk described his interaction with and description of the robber. He said the police subsequently showed him pictures and he reviewed the photographic line-up, marked as State Exhibit #1. *Id.* at 45. He stated that

_____

[7] *Neil v. Biggers*, 409 U.S. 188 (1972), sets forth factors to determine whether to exclude identification testimony from an unnecessarily suggestive identification procedure. "First, the court must consider whether the identification procedure is unnecessarily suggestive." *Satcher v. Pruett*, 126 F.3d 561, 566 (4th Cir.1997). "A procedure is unnecessarily suggestive if a positive identification is likely to result from factors other than the witness's own recollection of the crime." *Id.* (internal quotation marks omitted). Second, the court must look at the five factors from *Biggers* to determine if the identification testimony is nevertheless reliable under the totality of the circumstances. *Id.* The five *Biggers* factors are: (1) the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the witness' level of certainty at the confrontation; and (5) the time between the crime and the confrontation. 409 U.S. at 199–200.

he picked out the photograph from the picture. *Id.* at 46. In his habeas petition, Petitioner cites to page 44 [Entry #22-9 at 49], where Petitioner's counsel argued at the PCR hearing that the clerk's identification of Petitioner was not reliable because (1) too much time had passed between the time of the robbery and the line-up (i.e., one week); (2) Petitioner was wearing an orange jail uniform similar to those worn in Jasper County, where the jury is from; and (3) Petitioner was the only one in the line-up with braided hair. [Entry #22-9 at 49-50]. The trial judge noted the line-up was of six African-American males (the other five prisoners), two with orange clothing, which the judge could not tell whether they were jail suits. The trial judge noted they were not traditional mug shots in that there was no written identification or height chart behind them. *Id.* at 53. The state noted that there was at least one other photo of a person with similar hair. *Id.* at 50. After considering the five *Bigger* factors, the court found suppression of the line-up was not required as being constitutionally impermissible and unduly suggestive. *Id.* at 55.

At PCR, trial counsel testified that he reviewed the discovery with Petitioner prior to trial, reading him "everything in the file." [Entry #22-10 at 78]. He also acknowledged that he raised issues with the photo line-up in his *Biggers* hearing, adding that if he had the line-up in his file, he would have discussed it with Petitioner. *Id.* at 80-81. The record reveals that defense counsel had reviewed the line-up because he raised an issue concerning the line-up in his *Biggers* motion before the court. The record also reveals that Petitioner had a prior arrest, including 2001 convictions for manufacturing and distribution of ice, crank, or crack and strong arm robbery for which he was on parole at the time of the

trial. [Entry #22-10 at 38-39]. The court found that Petitioner had failed in his burden of proof. [Entry #22-10 at 86, 92].

Addressing Petitioner's allegations as to this claim, the PCR court's order of dismissal found as follows:

> This Court also finds that counsel properly reviewed the discovery material with Applicant. With respect to the photo lineup, this Court finds that counsel requested a *Biggers* hearing, but the trial judge allowed the photo lineup into evidence.

[Entry #33-1 at 5].

Petitioner has failed to show the PCR court unreasonably applied United States Supreme Court precedent in deciding this issue and failed to show by clear and convincing evidence the PCR court reached an unreasonable factual determination of this issue given the evidence and record before it. The line-up was presented on October 18, 2004, before either the arrest warrant or arrest of Petitioner occurred. Counsel was apparently aware of the line-up prior to trial and presented a basis for objecting to the line-up. The state court rejected the claim that the photo used in the October 18, 2004 line-up was taken subsequent to his arrest.

The undersigned finds the PCR court reasonably found Petitioner's trial counsel satisfied the *Strickland* standard, and therefore, the PCR court's decision is not an unreasonable application of federal law. The PCR court's conclusion is supported by the transcript of the *Biggers* hearing at trial. Petitioner has failed to overcome the deferential standard of review accorded the state PCR court's determination of this issue. Because the record supports the PCR court's conclusion that trial counsel properly requested a *Biggers*

hearing and properly challenged the identification, and the undersigned recommends that summary judgment be granted as to Grounds Two and Three.

IV.     Conclusion

For the foregoing reasons, the undersigned recommends that Respondent's motion for summary judgment [Entry#23] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 26, 2012                                                Shiva V. Hodges
Columbia, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).